UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL E. BOSSE,<br><br>              Plaintiff,<br><br>    v.<br><br>MR. HANSEN and MRS. STARR,<br><br>              Defendants. | Case No. 1:21-cv-00118-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE RE: CONDITIONS OF CONFINEMENT CLAIMS** |

The Clerk of Court conditionally filed Plaintiff Michael E. Bosse's Complaint because of his status as a prisoner and request to proceed in forma pauperis. Dkts. 3, 1. The Court permits only similar claims, grouped by similar defendants, to be included in a single complaint. The Court has notified Plaintiff that the medical claims brought in this action have been separated into a new action, pursuant to Federal Rule of Civil Procedure 20(a)(2).[1] *See* Case No. 1:21-cv-00176-DCN.

After reviewing the Complaint, the Court has determined that Plaintiff will be

---

[1] District courts have broad discretion to manage their own dockets. *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). Claims against multiple defendants within a single pleading must comply with Federal Rule of Civil Procedure 20(a)(2). That rule requires that at least one claim against all defendants must "arise out of the same transaction, occurrence, or series of transactions or occurrences" and raise "a question of law or fact common to all defendants." *See* Fed. R. Civ. P. 20(a)(2). Claims that do not meet these criteria must be separated into different lawsuits. *See, e.g., George v Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.").

required to file an amended complaint.

## LEGAL STANDARDS FOR SCREENING

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. A plaintiff must provide sufficient factual allegations to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Ibid*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ibid*.

In addition, the Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

The Court liberally construes a plaintiff's pleadings to determine whether the case

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

should be dismissed for lack of a cognizable legal theory or failure to plead sufficient facts to support a cognizable legal theory, under the *Iqbal*/*Twombly* standard. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989). Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend as explained in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). For Plaintiff's purposes, 42 U.S.C. § 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution.

Government officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violation, meaning that they *caused* it. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between

the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205-09.

## REVIEW OF CLAIMS

At all times relevant to this case, Plaintiff was a prisoner in the legal custody of the Idaho Department of Correction (IDOC). Due to overcrowding in Idaho, Plaintiff was transferred from an Idaho facility to a Texas overflow facility. Later, he was transferred to an Arizona facility upon termination of the IDOC contract with the Texas facility. Plaintiff is now back in an Idaho prison facility.

Plaintiff sues Mr. Higgins, the "contract warden" who oversaw the contracts with the out-of-state facilities to provide IDOC prisoner overflow housing. Mr. Higgins retired in October of 2020. Dkt. 3-1, p. 2. Plaintiff also sues Mr. Hansen, who took over the "contract warden" position at that time and who currently occupies that position. *Id.*, p. 3.

Because of the statutory restrictions of § 1983 requiring the personal participation

of a defendant to state a plausible constitutional violation, Plaintiff's claims against the IDOC officials who failed to take actions regarding prisoners' conditions of confinement in Texas and Arizona must be narrow and specific. The Court provides Plaintiff with the following legal standards to aid in drafting his amended complaint and deciding which sets of facts do and do not state a claim.

## 1. Noncognizable Claims

Plaintiff complains that he had no access to grievances while housed out of state. However, the United States Court of Appeals for the Ninth Circuit has held that "[t]here is no legitimate claim of entitlement to a [jail] grievance procedure" under the First Amendment. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988). This claim should not be included in any amended complaint.

Plaintiff also asserts that he had no access to commissary items while housed out of state. Prisons are obligated to provide the necessities of life to indigent prisoners free of charge, and inmates have no constitutionally protected right to be able to purchase items from the commissary. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir.1996)(stating that "we know of no constitutional right of access to a prison gift or snack shop"). This claim should not be included in any amended complaint.

## 2. Conditions of Confinement Claims

The Eighth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment. Although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with

adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knew that prisoners faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837-45. Prison officials are not liable under the Eighth Amendment if they lacked subjective knowledge of the risk or if they responded reasonably to the risk, even if the harm ultimately was not prevented. *Id.* at 844-45. Mere negligence on the part of a prison official is not sufficient to establish liability; rather, the official's conduct must have been wanton. *Id.* at 835.

Here, Plaintiff is not simply asserting conditions of confinement claims, as he would

against those Texas and Arizona officials who were his physical custodians, but he is making supervisory claims, which require an added layer of factual allegations to show how each Idaho Defendant "personally participated" in ignoring the alleged violations that occurred in Texas and Arizona. Plaintiff must state the "who, what, where, when, and why" of each particular condition, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violations and yet failed to act to correct the continuing violations alleged in the Complaint (or remove him from the prison):

- Having a broken toilet and living in raw sewage.

- Not having hot running water in his cell.

- Having no power.

- Not having showers for a week and lack of hot water for showers when showers were available.

- Having cell temperature issues (too cold and too hot).

- Not having clean laundry service.

Additionally, Plaintiff must carefully specify how long each condition lasted and how and when it was remedied, if ever. A "severe or prolonged" lack of sanitation can violate the Eighth Amendment. *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995). However, unsanitary conditions do not give rise to a constitutional violation if they are merely temporary. *Id.* at 1315. "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison*, 887 F.2d 134,

137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

### 3. Retaliation Claims

Plaintiff alleges that he suffered retaliation from Arizona staff in the form of cell searches. A First Amendment retaliation claim must plausibly allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). Plaintiff must state the "who, what, where, when, and why" of each claim of retaliation by an out-of-state official, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violations of the out-of-state officials and yet failed to act to correct the continuing violations or remove him from the prison.

### 4. Claims re: Cell Searches Conducted Solely for Harassment

Plaintiff alleges that Arizona officials "abused" him by conducting cell searches. Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). A complaint for calculated harassment must state sufficient facts to show a pattern of calculated harassment, which means multiple incidents of harassment. *See id.*

The United States Supreme Court has reiterated that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002) (internal citations and punctuation omitted). Further, in *McKune v. Lile*, 536 U.S. 24, 41 (2002), the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not."

Plaintiff must state the "who, what, where, when, and why" of each claim of harassment by an out-of-state official, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged continuing violation, and yet failed to act to correct it or remove him from the prison.

### 5. Mail Claims

Plaintiff asserts that Arizona officials engaged in "mail-steaming." Inmates retain the First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Inspection of mail by prison officials is generally permissible as reasonably related to the legitimate penological interest of promoting security and uncovering contraband. *See Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam).

Legal mail, however, such as mail from an attorney, is confidential and subject to stricter First Amendment protection. *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996). "[A] prison's security needs do not automatically trump a prisoner's First

Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003).

Even though the First Amendment offers protection for inmates' legal mail, the Supreme Court has upheld prison regulations allowing prison officials to open and inspect legal mail in the presence of the inmate. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974). This inmate presence requirement does not apply to ordinary, non-privileged mail; *prison officials may open and inspect such mail without raising constitutional concerns*.

Plaintiff must state the "who, what, where, when, and why" of each claim of mail-tampering by an out-of-state official, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violation, and yet failed to act to correct it.

Plaintiff should be aware that officials are entitled to open and inspect nonlegal mail, using steam or otherwise, for safety and security reasons. Therefore, if Plaintiff's claim is over nonlegal mail steamed open outside his presence, or legal mail steamed open in his presence, he should not include it in any amended complaint.

### 6. Transportation Claims

Plaintiff asserts that he almost died of suffocation in a van during his transport from Texas to Arizona. It is unclear how Plaintiff can show that the Idaho officials knew of this condition *before or during* its occurrence so that they could have acted to do something to change the conditions. Plaintiff must state the "who, what, where, when, and why" of the transportation violations by an out-of-state official, *and, in addition*, he must state the

"who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violation in advance or as it was occurring, so that they actually had opportunity but yet failed to act to correct the violation. If Idaho officials did not have notice of the transportation issues before they occurred or in time to correct them, Plaintiff should not include these claims in his amended complaint. Rather, the claims must be asserted against the particular transportation officers in the court having personal jurisdiction over the officers.

### 7. Restrictive Housing Unit Claims

In this lawsuit, Plaintiff alleges that, in the Arizona prison, he was placed in a hostile and restrictive housing unit, with 24/7 lockdown, for 6 months, because this was the only unit where out-of-state inmates could enjoy protective custody; however, in that unit, the protective custody inmates were treated as though they were in disciplinary segregation, with little property and few privileges. Dkt. 3, p. 2. He asserts that protective custody inmates from Hawaii, Nevada, Kansas City were permitted to live in general population settings, where they could roam freely and have their property, but Idaho protective custody inmates were locked down and handcuffed when moved, as if they were in disciplinary segregation.

In a previous lawsuit, Plaintiff asserted that, when he was transferred to Texas, he was placed in a general population setting, together with maximum security inmates. He asserted that he needed to be protected from specific inmates, and from maximum security inmates in general. *See* Case No. 1:19-cv-271-DCN, *Bosse v. Blades, et al*. Plaintiff's earlier complaints may or may not have been part of the reasoning behind his protective

custody housing in Arizona; unfortunately, added safety often comes with more restrictive conditions than in the general prison population setting.

Plaintiff has not provided sufficient facts to show that his placement in a more restrictive "protective custody" setting violates the federal Constitution. To state an actionable Fourteenth Amendment procedural due process claim, a plaintiff must allege facts showing "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (citation omitted).

Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 482-86 (1995). The Due Process Clause itself does not confer on prisoners a liberty interest in being confined in the general prison population instead of segregation. *See id.* But, a state may create a "constitutionally-protected liberty interest by requiring its decisionmakers to base their decisions on objective and defined criteria," before segregating prisoners. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). If a state law or prison regulation is deemed to have created a liberty interest, the next step is to determine whether a violation of the law or regulation is actionable by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Liberty interests created by state law or prison regulations that entitle an inmate to due process are "generally limited to freedom from restraint." *Sandin*, 515 U.S. at 484 (internal citations omitted). Typically, segregation "in and of itself does not implicate a

protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (collecting cases). Rather, a liberty interest arises only if the conditions of segregation impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

To determine whether segregation poses an atypical and significant hardship, courts must conduct a "case by case, fact by fact" analysis of the "condition or combination of conditions or factors" that the plaintiff experienced. *Serrano*, 345 F3d. at 1078 (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996)). That analysis includes:

(1) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and

(2) whether the length of the plaintiff's sentence was affected. *Sandin*, 515 U.S. at 486-87; *see also Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the United States Supreme Court identified a set of conditions that met the "atypical and significant hardship" standard:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30–day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30–day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship

within the correctional context. It follows that respondents
have a liberty interest in avoiding assignment to OSP.

*Id*. at 223-24 (citations omitted).

"Administrative segregation" is a catch-all phrase for any form of non-punitive segregation. For example, prisoners may be segregated to protect them from other prisoners; to protect other prisoners from the segregated prisoner; or pending investigation of disciplinary charges, transfer, or re-classification. *See Hewitt*, 459 U.S. at 468. An example of a legitimate administrative ground for placement and retention in segregated housing is gang validation, which is not considered a punitive decision. *See Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468.

In *Hewitt*, the United States Supreme Court held that the process due for initial placement in administrative segregation is as follows: (1) "an informal nonadversary hearing" must be held "within a reasonable time after the prisoner is segregated"; (2) the prisoner must be informed of prison officials' "reasons for considering segregation"; and (3) the prisoner must be allowed "to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1101 (9th Cir. 1986) ("*Toussaint I*"). In such instances, a prisoner ordinarily is limited to presenting his views in a written statement, although prison administrators may permit oral presentations in cases where they believe a written statement would be ineffective. *Hewitt*, 459 U.S. at 476.

An "ad-seg" prisoner is *not* entitled to: (1) detailed written notice of charges; (2) representation by counsel or counsel-substitute; (3) an opportunity to present witnesses; (4) an opportunity to cross-examine witnesses; (5) a written decision describing the reasons for placing the prisoner in administrative segregation; or (6) disclosure of the identity of confidential informants providing information leading to the placement of the prisoner in administrative segregation. *Toussaint I*, 801 F.2d at 1100–01; *Wolff v. McDonnell,* 418 U.S. 539, 567–68 (1974).

In administrative segregation decisionmaking, prison officials may rely mainly on subjective factors because of the security reasons behind such segregation:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior; indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution.

*Toussaint I*, 801 F.2d at 1100 (citing *Hewitt*, 459 U.S. at 474).

The process due for retaining a prisoner in administrative segregation after initial placement there is that prison officials must conduct a periodic review of the segregation decision, but the intervals at which that review occurs is at the discretion of prison officials.

*Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990), *cert. denied*, 502 U.S. 874 (1991) ("*Toussaint II* "). The United States Court of Appeals for the Ninth Circuit has upheld periodic reviews occurring every 120 days as comporting with due process. *Id*. Again, due process for periodic reviews does *not* require a detailed written notice of the charges, representation by counsel or other inmates, or an opportunity to present witnesses, or a hearing. *Toussaint I*, 801 F.2d at 1100–01.

Plaintiff will be given leave to state the "who, what, where, when, and why" of each alleged due process housing violation by an out-of-state official, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violation and had opportunity but yet failed to act to correct it or remove him from the prison. Plaintiff must state facts showing that his housing constituted an atypical and significant hardship. Plaintiff will also have to show that he asked for housing reviews and that out-of-state officials and Idaho officials ignored his requests. If he was afforded housing reviews, he should attach those to his amended complaint.

## 8. Claims of Lack of Telephone Access to Family and Friends

Prisoners have a First Amendment right to telephone access, *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986), and clearly retain protections afforded by the First Amendment, such as the right to communicate with family and friends, *Pell v. Procunier*, 417 U.S. 817 (1974); *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003). The constitutional right at issue has been described as the right to communicate with people outside prison walls, and "a telephone provides a means of exercising this right." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002).

Nevertheless, an inmate "has no right to unlimited telephone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir.), *cert. denied*, 493 U.S. 895 (1989), citing *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). Instead, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Strandberg*, 791 F.2d at 747 (9th Cir.1986).

Plaintiff will be given leave to state the "who, what, where, when, and why" of each alleged telephone access violation by an out-of-state official, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violation and had opportunity but yet failed to act to correct it or remove him from the prison.

### 9. Access to Courts Claims

#### A.     *Lack of Phone Contact with Attorneys*

Plaintiff alleges that the out-of-state facilities prevented him from talking to his Idaho attorneys about his criminal case or U.P.C.R. (criminal post-conviction) case. To state an access to courts claim, Plaintiff will have to state facts showing he suffered an actual injury from his inability to phone his Idaho attorneys.

An "actual injury" is some specific "instance in which an inmate was actually denied access to the courts." *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989). Only if an actual injury is alleged does a plaintiff state a claim for which relief can be granted. *Id*.; To prove an actual injury, the prisoner must show that the inadequacy in the institution's program hindered his effort to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343, 354–55 (1996). An impermissible

hindrance might include the dismissal of a prisoner's action for failure to satisfy some technical requirement because of deficiencies in the prison's legal assistance program. *Id*. at 351.

Plaintiff will be given leave to state the "who, what, where, when, and why" of each alleged access to court violation for lack of attorney telephone access caused by an out-of-state prison official, *and, in addition*, he must state the "who, what, where, when, and why" of how each Idaho defendant had personal notice of the alleged violation and had opportunity but yet failed to act to correct it or remove him from the prison.

### B.     U.P.C.R. Evidence Claim

Plaintiff alleges that Mr. Hansen "prevented [Plaintiff] from submitting CD-ROM-evidence in his U.P.C.R." (Uniform Post-Conviction Relief) action. Mr. Higgins told Plaintiff to contact him regarding retrieving some stolen legal mail from Mrs. Ashford, the IDOC paralegal at Orofino, so that Plaintiff could submit it as evidence in his U.P.C.R. petition. Mr. Hansen was supposed to permit Plaintiff to make a phone call to fix the situation, but he never did give Plaintiff authorization to do so. Mr. Hansen said he would, but did not, make the exhibits available for the state court action.

Plaintiff's U.P.C.R. case was dismissed on February 5, 2021 for failure to meet his burden of proof. Plaintiff asserts that dismissal of his case added 12 years to his sentence. (Normally, a post-conviction action is a review of a conviction and sentence, not an opportunity for the court to enhance a sentence. Plaintiff will need to further explain this consequence in his amended complaint.)

Plaintiff will need to add specific facts to his amended complaint to meet the access

to courts standard. Under the First Amendment, prisoners have a right of access to the courts. *Casey*, 518 U.S. at 346. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002).

To state an access to courts claim when a prisoner claims that he suffered the loss of a suit that cannot now be brought, a prisoner must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation; (2) loss of a "nonfrivolous" or "arguable" underlying claim that is set forth in the Complaint, **including the level of detail necessary "as if it were being independently pursued";** (3) specific allegations showing that remedy sought in the access to courts claim is not otherwise available in a suit that otherwise could be brought. *Id*. at 415-17.

For example, a complaint alleging certain documents pertaining to a pending trial were confiscated and not returned was determined to be too conclusory to support a claim of denial of access to the courts. *See Jenkins v. McMickens*, 618 F.Supp. 1472, 1474–75 (S.D.N.Y. 1985). Therefore, here, Plaintiff must specifically set forth each piece of evidence he was unable to present and explain how that evidence would have prevented his U.P.C.R. petition from being dismissed. He should attach the evidence, plus the relevant U.P.C.R. pleadings and court orders as exhibits to his amended complaint. He must state whether he was represented by counsel, and, if so, what efforts his counsel made to obtain the evidence from the IDOC. He must also state what efforts he made in state court to have

the court extend his time to bring forward the evidence because of the prison transfer issues.

Plaintiff's claims may be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), if, in fact, it appears that dismissal of his U.P.C.R. case caused him to have a longer sentence and dismissal was caused by Defendants' failure to aid Plaintiff in obtaining his evidence to be submitted to the state court.[2] (Dkt. 3, p. 2.) However, that analysis can be done at a later stage of proceedings.

10. **Other Documentation to Attach to Amended Complaint**

For **each** of Plaintiff's claims, he must provide copies of the written notices he provided to each Idaho defendant[3] **or** a detailed description of (1) the "who, what, where, when, and why" that was included in the body of the written notice, (2) how he knows each Idaho defendant received the written notice, and (3) why a copy of the written notice is unavailable.

If Plaintiff has already litigated the subject matter of **any** of these claims against the Texas or Arizona medical providers in a lawsuit in those states, he must provide the case numbers and case names to the Court, as well as specific factual information about his

---

[2] In *Heck*, the Supreme Court held that, where a favorable verdict in a civil rights action would necessarily imply the invalidity of a plaintiff's conviction, he must first prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* As a result, "a claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id*. On the other hand, if "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (footnote omitted).

[3] The Court is requiring Plaintiff to provide copies of the written notices or a description of their contents—not to show exhaustion of administrative remedies—but only for pleading purposes of showing knowledge and subjective deliberate indifference, which are required elements of the cause of action against each supervisory defendant.

claims and how they were resolved.

## 11. Conclusion and Further Instructions for Amendment

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will grant Plaintiff 28 days to amend the Complaint, or his Complaint will be dismissed for failure to state a claim upon which relief can be granted, without further notice to him.

If Plaintiff chooses to amend the Complaint, he must allege a sufficient causal connection between each defendant's actions and the claimed deprivation of his constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 (a complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement" (punctuation altered)).

An amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1. An amended pleading completely replaces the original pleading.

The amended complaint must be **legibly** written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, he must also file a "Motion to Review the Amended Complaint." If Plaintiff's amendment does not comply with Rule 8, this case

may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Upon his return to an Idaho prison facility, Plaintiff filed a "Motion for Preliminary or Emergency Injunction and Hearing Against IDOC." Dkt. 6. Issuance of a preliminary injunction is appropriate where a plaintiff can show that (1) there are "serious questions going to the merits," (2) there is a "a balance of hardships that tips sharply towards the plaintiff," (3) "there is a likelihood of irreparable injury," and (4) "the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The type of relief a plaintiff is seeking sets the stage for the court's review of whether a preliminary injunction should be granted: (1) a *prohibitory* injunction is intended to preserve the status quo; (2) a *mandatory* injunction "goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored"; and (3) a request for a mandatory preliminary injunction can be granted only if "the facts and law clearly favor the moving party." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (punctuation altered).

In addition, in the prison context, the Prison Litigation Reform Act (PLRA) provides that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than

necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). Further, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.; accord Nelson v. Campbell*, 541 U.S. 637, 650 (2004) ("The Prison Litigation Reform Act of 1995 (Act) imposes limits on the scope and duration of preliminary and permanent injunctive relief, including a requirement that, before issuing such relief, '[a] court shall give substantial weight to any adverse impact on ... the operation of a criminal justice system caused by the relief.'").

Plaintiff's preliminary injunction claims are not "preliminary" in nature, but are requests to have the merits of past alleged violations litigated immediately, not to have the status quo preserved during the pendency of litigation. Those are not appropriate requests. Plaintiff's only "emergency" claims seem to be that his legal files have not been returned to him since his return to Idaho. That is not a claim related to the merits of the conditions of confinement claims in Texas and Arizona.

The request for preliminary or emergency injunctive relief will be denied. The Court's "equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology v. Queen's Medical Center*, 810 F.3d 631, 633 (2015). Importantly, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the

party's motion and the conduct asserted in the complaint." *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Where a preliminary injunction complains of a set of facts distinct from those in the complaint, a preliminary injunction is inappropriate. *LeBoeuf, Lamb, Greene & MacRae, LLP. v. Abraham*, 180 F.Supp.2d 65, 69-70 (D.D.C. 2001) (motion for preliminary injunctive relief is denied where the complaint involves facts, legal issues, and parties different from those presented in the complaint).

If Plaintiff is still without his legal materials, and he is in danger of suffering harm or injury in any of his lawsuits, he may file a new lawsuit on access to courts—provided he has exhausted his administrative remedies. In his federal actions, Plaintiff generally can seek extensions of time if he is still waiting for his files to avoid harm or injury in his litigation.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff has 28 days within which to file a conforming amended complaint in this action. If Plaintiff does so, he must file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, this case will be dismissed for failure to state a claim upon which relief can be granted, without further notice.

2.      Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. The Court will review the request when it

receives more information about the claims and defenses.

3.      Plaintiff's Motion for Preliminary or Emergency Injunction and Hearing Against IDOC (Dkt. 6) is DENIED.

DATED: June 17, 2021

David C. Nye
Chief U.S. District Court Judge